Franklin J. Rooks Jr., Esq.
Attorney ID: 023802010
Jacobson & Rooks, LLC
525 Route 73 North, Suite 104
Marlton, NJ 08053
T: (856) 874-8999
F: (856) 494-1707

Matthew A. Luber, Esq.
Attorney ID:  017302010
McOmber & McOmber, P.C.
30 S. Maple Avenue, Suite 201
Marlton, NJ 08053
T: 856-985-9800
F: 732-530-8545
*Attorneys for Plaintiffs/Relators Kristine Costello & Karen Myers*

---

| | |
|---|---|
| STATE OF NEW JERSEY EX. REL. KRISTINE COSTELLO, KAREN MYERS,<br><br>          Plaintiffs,<br><br>   v.<br><br>WINTER ENTERPRISES, P.C., BLACKFORD DENTAL MANAGEMENT, LLC, BLACKFORD DENTAL MANAGEMENT HOLDINGS, LLC, BLACKFORD DENTAL MANAGEMENT HOLDINGS NEW JERSEY LLC, SUPERIOR SMILES PLUS, LLC, BLACKFORD DENTAL MANAGEMENT HOLDINGS NEW JERSEY, LLC, NEW JERSEY DENTAL GROUP, P.C., SCOTT BRUGGEWORTH, ANNIKA BRUGGEWORTH, MILT HALLOCK, RICHARD WELKOWITZ, ALESSANDRO GIANNINI, ARMANDO R. YANEZ, ARMANDO J. YANEZ, AND JAMES LOZIER,<br><br>          Defendants, | UNITED STATES DISTRICT COURT<br><br>DISTRICT OF NEW JERSEY<br><br>DOCKET NO.: 1:16-cv-01803-NLH-AMD<br><br>**FIRST AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

---

## FIRST AMENDED COMPLAINT

Plaintiff Karen Myers and Plaintiff Kristine Costello (the "Relators"), by and through their counsel, hereby file this Complaint under seal on behalf of themselves, the State of New Jersey, and the United States of America, pursuant to the provisions of the qui tam provisions of the New Jersey State False Claims Act, N.J. STAT. ANN. §§ 2A:32C-3 (2013) et. seq., the Federal False Claims Act 31 U.S.C. §§ 3729-33, and allege as follows:

<u>PARTIES</u>

1.      Relator Myers is a citizen of the State of New Jersey, residing at 1212 Stafford Road, Glassboro, New Jersey 08028.  At all times relevant hereto, Relator was employed by Defendants as an Orthopedic Coordinator.  Relator Myers's responsibilities included processing insurance and Medicaid claims for the dental practice.

2.      Relator Costello is an individual residing at 323 Pine Avenue Egg Harbor Township, New Jersey 08234.  At all times relevant hereto, Relator Costello was employed by Defendants the Comptroller for Defendants' various dental facilities. she performed numerous financial and non-financial functions.  Relator Costello's responsibilities included human resource functions such as hiring and terminating personnel; administering the weekly payroll; managing workers' compensation claim; and assisting in the credentialing of dentists with the New Jersey Medicaid program.  She was also the Defendants' 401K plan administrator. She also handled accounts payable, and generated monthly financial statements.

3.      Defendant Winter Enterprises, P.C. ("Defendant Winter") is a New Jersey professional corporation registered with the New Jersey Division of Corporations with entity ID 0100790688.  Defendant Winter has a business address of 120 South 6th Street, Vineland, New Jersey 08360.

2

4.      Defendant Superior Smiles Plus, LLC ("Defendant Superior Smiles") is a limited liability company organized and existing under the laws of the State of New Jersey.  It has an entity identification number of 0600335306 as registered with the New Jersey Department of Corporations.  Its principal place of business is located at 337 Clarkstown Road, Mays Landing, New Jersey 08330.

5.      Defendant Blackford Dental Management, LLC, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania.  This Defendant is registered with the Pennsylvania Department of Corporations with an entity identification number of 4151301.  Its principal place of business located at 101 N. Pointe Blvd #202, Lancaster, Pennsylvania 17601.

6.      Defendant Blackford Dental Management Holdings New Jersey, LLC is a limited liability company organized and existing under the laws of the State of Delaware.  It has an entity identification number of 5788485, as registered with the Delaware Department of Corporations.

7.      Defendant Blackford Dental Management Holdings, LLC, is a limited liability company organized and existing under the laws of the State of Delaware.  It has an entity identification number of 5705923 as registered with the Delaware Department of Corporations.

8.      Defendant Blackford Dental Management Holdings New Jersey, LLC is a limited liability company organized and existing under the laws of the State of Delaware.  It has an entity identification number of 5788485 as registered with the Delaware Department of Corporations.

9.      Defendant New Jersey Dental Group, P.C. is a professional corporation organized and existing under the laws of the State of New Jersey.  It has an entity identification number of

0101037990 as registered with the New Jersey Department of Corporations.  Its principal place of business is located at 1103 W. Sherman Avenue, Vineland, New Jersey, 08360.

10.     Defendant Blackford Dental Management Holdings, LLC, Defendant Blackford Dental Management Holdings New Jersey, LLC, Defendant Blackford Dental Management, LLC, Blackford Dental Management Holdings New Jersey, LLC, and Defendant New Jersey Dental Group, P.C. are collectively referred to as "Defendant Blackford."

11.     Defendant Winter and Defendant Blackford did business as "Signature Smiles" dental practice with offices throughout southern New Jersey. Upon information and belief, Defendant Scott Bruggeworth, DDS ("Defendant Scott") is a dentist and an owner and/or principal of Defendant Winter, Defendant Blackford.  Upon information and belief, Defendant Scott is a resident of the State of New Jersey residing at 337 Clarkstown Road, Mays Landing, New Jersey 08330.

12.     Upon information and belief, Defendant Annika Bruggeworth ("Defendant Annika") is an owner and/or principal of Defendant Winter and Defendant Blackford Dental. She is a resident of the State of New Jersey residing at 337 Clarkstown Road, Mays Landing, New Jersey 08330.  Defendant Scott and Defendant Annika are husband and wife, respectively.

13.     Upon information and belief, Defendant Milt Hallock ("Defendant Milt") is a resident of New Jersey and served as the Regional Manager of Defendant Winter and Defendant Blackford.

14.     Upon information and belief, Defendant Richard Welkowitz ("Defendant Welkowitz") is Chairman and/or principal of Defendant Winter, Defendant Blackford.  Upon information and belief, Defendant Welkowitz is a resident of the Commonwealth of Pennsylvania.

15.     Upon information and belief, Defendant Alessandro Giannini ("Defendant Alessandro") is a dentist and the former Chief Operating Officer and/or principal of Defendant Winter, Defendant Blackford.  Upon information and belief, Defendant Alessandro is a resident of the State of New Jersey residing at 15110 Sundial Place, Lakewood Ranch, Florida 34202.

16.     Upon information and belief, Defendant Armando R. Yanez ("Defendant Armando R") is the former Chief Marketing Officer and/or principal of Defendant Winter, Defendant Blackford.  Upon information and belief, Defendant Armando is a resident of the State of Florida residing at 3945 Venetian Way, Tampa, Florida 33634.

17.     Upon information and belief, Defendant Armando J. Yanez ("Defendant Armando J") is the Chief Financial Officer and/or principal of Defendant Winter, Defendant Blackford.  Upon information and belief, Defendant Armando J is a resident of the State of Florida residing at 9728 N Armenia Avenue, Tampa, FL 33612

18.     Upon information and belief, Defendant James Lozier ("Defendant James") a dentist and Chief Operations Officer and/or principal of Defendant Winter, Defendant Blackford. Upon information and belief, Defendant James is a resident of the State of Florida residing at 31 Acres Drive, Trenton, New Jersey 08690.

19.     Defendant Scott, Defendant Annika, Alessandro, Defendant Armando R, Defendant Armando J, and Defendant James are collectively referred to as "Individual Defendants."

## JURISDICTION AND VENUE

20.     The Court has jurisdiction over the Defendants' violations of the New Jersey False Claims Act and the Federal False Claims Act pursuant to 31 U.S.C. § 3732(b).

21.     A civil action for violations of the New Jersey False Claims Act may be brought in state or federal court. N.J. STAT. ANN. § 2A:32C-5 (2013).

22.     This Court has personal jurisdiction over all of the Defendants because they are all located within the District of New Jersey.

23.     Venue is proper under 28 U.S.C. §1391(b), (c), and 31 U.S.C. § 3732(a) because the Defendants transact business within the District of New Jersey and the facts forming the basis of this Complaint occurred within this District.

24.     Relators are the original source of the information upon which this Complaint is based, pursuant to N.J. STAT. ANN. § 2A:32C-9 (2013) and 31 U.S.C. § 3730.

## FACTUAL BACKGROUND

25.     All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

26.     Individual Defendants have an ownership interest in a multi-office dental practice in New Jersey.  Upon information and belief, the dental practices are held in one or more limited liability companies and professional corporations.

27.     The dental practices are operated under the name "Signature Smiles," hereinafter, "Signature").  "Signature" shall also refer to the Defendants.

28.     The dental practices are located at the addresses contained in **Exhibit 1 to the original complaint.**

29.     Defendants' dental practices participate with the State of New Jersey Medicaid program, managed Medicaid programs, and other insurance programs.

30.     The State of New Jersey managed Medicaid programs with which Defendants participate include, but are not limited to, United Healthcare Community Health Plan, Horizon,

Amerigroup, and Wellcare.  Upon information and belief, Defendants are/were paid approximately $150,000-$300,000 per month by Medicaid. *See* **Exhibit 2 to the original complaint.**

31.     The State of New Jersey is a self-funded entity for purposes of providing health insurance benefits and dental coverage for its employees.

32.     The State of New Jersey established the State Health Benefits Program (SHBP) in 1961. It offers medical and prescription drug coverage to qualified State and local government public employees, retirees, and eligible dependents; and dental coverage to qualified State and local government/education public employees, retirees, and their eligible dependents.[1]

33.     Upon information and belief, the Defendants provided dental services to employees of the State of New Jersey, in addition to Medicaid beneficiaries.

34.     The State of New Jersey's dental plan for its employees is administered through the Aetna Insurance company.[2]

35.     Defendant Scott is a dentist and participates with the State of New Jersey Medicaid program, managed Medicaid programs, and other dental insurance programs.

36.     The Defendants and their dental practices received Medicaid payments that were funded by the State of New Jersey and the Federal government.

37.     The Defendants' dental practices are managed by Defendant Hallock and Defendant Annika.

38.     Defendants' employed dozens of dentists, including but not limited to, those identified in the spreadsheet attached to the original complaint as **Exhibit 3.**

---

[1] See http://www.state.nj.us/treasury/pensions/pdf/handbook/hd0379.pdf
[2] See http://www.aetnastatenj.com/state/dental-employee.php

39.     The Defendants billed the State of New Jersey Medicaid program, managed Medicaid programs, and other dental insurance programs for services that are required to be rendered by licensed dentists, licensed dental hygienists, and registered dental assistants.

40.     Signature utilizes dental management practice software called "Dentrix Enterprise," (hereinafter, "Dentrix").[3]  Dentrix has a scheduler/calendar feature which allows the dental practice to schedule patients and procedures.  Dentrix is designed to organize the dental practice and to prevent overlapping scheduling of procedures.

41.     Dentrix has compliance features that allow a dentist or dental assistant to allocate his or time between patients and to avoid the double-booking of patients.

42.     The Defendants' dental offices do not utilize these compliance features; they manually enter time allotments for each patient and procedure into the daily schedule which frequently results in double-booking of patients.

43.     The front desk staff at the Defendants' offices schedule patient appointments.   At each dental office, there is a schedule for each dental provider has his/her own columns for specific days on the Dentrix calendar.  The staff schedules patients under the appropriate providers' column.

44.     In order to submit claims for any dental services rendered, the dentist must be credentialed with the State of New Jersey Medicaid program, managed Medicaid programs, and other dental insurance programs.  Credentialing is the formal process of establishing the qualifications of licensed professionals to participate with Medicaid and other insurance programs.

---

[3] See http://dentrix.com/products/dentrix-profitability-coaching

45.    The provider columns on the dental office patient schedule included both credentialed and non-credentialed dentists.

46.    Patients were scheduled under the provider that actually performed the services.

47.    Upon the arrival of each patient, the front desk staff "checks-in" each patient by recording the patient's time of arrival and changing the appointment status to "arrived" or "here."

48.    Once checked-in, dental patients are brought to the exam and procedure rooms and dental services are performed.

49.    Through Dentrix, the dentists are able to select the appropriate claim procedure "code" that should reflect the actual dental work performed on the patient and the pre-generated work charges.

50.    After services are rendered, the Defendants' front office generates an insurance claim form which is to be submitted to the insurance company or government for payment.

51.    The Defendants' credentialed and non-credentialed providers rendered services to Medicaid beneficiaries; that is, some providers rendered services to Medicaid beneficiaries without being credentialed by the Medicaid program.

52.    The Medicaid program will not reimburse services rendered by non-credentialed providers.

53.    By default, Dentrix would generate an insurance claim form which listed the rendering provider for the claim submission to Medicaid or any other insurance carrier.

54.    Prior to submitting any insurance claim forms, the front desk staff responsible for "checking-out" the patient had standing orders to change the non-credentialed rendering provider to a credentialed provider so that the Defendants would be reimbursed for the services rendered

by the non-credentialed provider.  The Defendants specifically instructed their staff to ensure that insurance claims contained the name of credentialed providers instead of any non-credentialed provider who rendered the services. ***See***, ***e.g.*, Exhibit 4 to the original complaint**.

55.     At the end of each business day, the claims for services rendered were batched prior to submitting to Medicaid or any other insurer.  The following day, Defendants' management team performed a final review to ensure that the claim forms only contained the names of credentialed providers.  If any claim form contained a non-credentialed provider, Defendants' management team would change the rendering provider from a non-credentialed provider to a credentialed provider so that Defendants would receive payment for the services rendered by the non-credentialed provider.

56.     Defendants' management team, namely, Defendant Milt, Darlene Mander, and Valerie Bennett, were responsible for reviewing claim forms, "correcting" claim forms, submitting claim forms, and ultimately insuring that Defendants received payment for all services rendered, regardless of whether a credentialed or non-credentialed provider performed the services.

57.     Furthermore, Defendants created financial incentives to provide staff with additional compensation for exceeding pre-determined daily billing targets.   In fact, Defendants conducted a daily morning staff meeting with the dentists and other billing staff in which Defendants reviewed the daily billing targets and the dental work to be performed that day.  At the meeting, Defendants' management team provided the staff with a targeted billing and revenue goal to achieve each day.  ***See* Disclosure Statement; *see also* Exhibit 5 to the original complaint.**

58.     Patients are scheduled in Dentrix based on the services that they are expected to receive (e.g., a root canal, a dental cleaning, etc.).

59.     The Defendants anticipate the services that will be performed on the patient's visit and create daily financial goals based on the dollar value of the services that Defendants expect to be rendered.

60.     If a patient cancels his/her scheduled visit, it makes it more difficult to achieve the targeted financial goal.

61.     The Defendants' system incentivized its employees to up-code and bill for more services than were medically necessary to achieve their daily revenue targets.

62.     As a direct result of Defendants' reward system, Defendants' dentists often over-billed Medicaid and other insurance companies.  For example, Defendants over bill Medicaid by:

> i.     performing medically unnecessary dental work on patients. *See* **Exhibit 6 to the original complaint** (demonstrating excessive or unnecessary restoration procedures performed on healthy teeth for patients Gloria Key and Emanuel Sanchez.);
>
> ii.    billing for services not actually performed.  *See* **Exhibit 7 to the original complaint** (showing billing for services not actually rendered to patient Julia Walton as patient hyperventilated prior to the performance of the procedure, yet Medicaid was billed for the procedure as if it was performed; *see also* **Relators' Disclosure Statement, attached to the original complaint**);
>
> iii.    "up-coding" claims submitted to insurance or Medicaid providers, i.e., by entering procedure codes that are more expensive than the procedure

11

codes which more accurately describe the actual dental work performed. *See* **Exhibit 8 to the original complaint** which shows procedure code D7140 billed in connection with patient Hilary Hernandez; the actual procedure performed should have been billed as procedure code D7111, which accurately reflects the actual treatment performed.  The Medicaid fee schedule pay $32.00 for code D7140; Medicaid pays $19.50 for code D7111; and,[4]

iv.   the Defendants' management team's changing the procedure code originally selected by the treating Dentist to an incorrect, more expensive procedure code, all with the goal of generating additional revenue for the dental practice. *See* **Relators' Disclosure Statement.**

63.   Unless the treating dentist has obtained the proper credentials set forth in Medicaid regulations, dentists are prohibited by law from billing the government for services provided to Medicaid recipients.

64.   To circumvent this legal requirement and to increase revenue, Defendants simply submitted all of their Medicaid claims under the auspices of a "credentialed" provider, even though on many occasions a non-credentialed provider actually performed the dental work.

65.   Defendants submitted claims to the Medicaid program and received payment from the Medicaid program for dental work performed by non-credentialed providers.  Defendants submitted false claim forms identifying a credentialed provider as the treating dentist when, in fact, a non-credentialed provider performed the dental services.

---

[4] *See* https://www.njmmis.com/downloadDocuments/CPTHCPCSCODES.pdf

66.     Defendants billed Medicaid for services that were physically impossible to perform.

67.     Signature's claim form submissions to Medicaid reveal that Defendant Scott treated significantly more patients than one dentist could provide services for in a single day on multiple days throughout the years.

68.     Further, Defendants billed Medicaid for services performed on the same day by one dentist from two separate locations, even though that dentist was only physically capable of performing a full-days' work from one location.   For example:

     i.   On many occasions, Defendants submitted claim forms listing Defendant Scott as the credentialed, treating dentist when in reality the treating physician was another non-credentialed dentist.  On January 7, 2015, patient Makusada Aktar was seen by Doctor Jeeri.  However, Signature's Medicaid claim form lists Defendant Scott as the treating physician.  In fact, Defendant Scott was actually treated patients at a different office (the "Vineland Sherman Ave" facility) altogether on January 7, 2015 that day. *See* **Exhibit 9B to the original complaint.**  For that same day, Signature's internal claim form also lists "Emmelyn Cruz" as being treated by Defendant Scott, even though Defendant Scott does not treat patients at the "6th Avenue" location at all.  The dentist that actually provided services for Ms. Cruz was not credentialed. Id. *See also* **Relators' Disclosure Statement.**

    ii.   On November 5, 2014, Defendant Scott was scheduled to work at the Sherman Avenue location and was not scheduled to work at the Atlantic

City location.  However, Signature submitted claims to Medicaid indicating services were provided by Defendant Scott instead of the non-credentialed dentist who actually provided the service.  ***See* Exhibit 9C to the original complaint.**

69.   Upon information and belief, Defendants also submitted claims for work performed by a "specialist," even though the actual work was performed by a non-specialist.

70.   Defendants' management team explicitly instructed lower-level employees to ensure" that claims were not submitted to Medicaid with non-credentialed dentists on the claim forms because those claims would be denied by Medicaid.  ***See* Exhibit 10 to the original complaint.**  Defendants' management team thus billed the services performed by non-credentialed dentists to Medicaid under the auspices of a credentialed dentist.

71.   As Defendants' manager explained in an email on January 31, 2015:

Melyssa & Diana,

Dr. Rashmi is now par with both medicaids, so is Dr. Brooks, Dr. Albano & Dr. Bobba.  Please make sure the claims for Medicaid are submitted under the rendering provider, you should no longer have to change the provider on the claim to Dr. B. unless you have a temp doctor or we add a new doctor to the staff.  Also, Dr. Bobba & Dr. Albano are specialists & UHC now pays specialty fees for the pedodontists, please make sure all UHC pts seen by them are billed UHC specialty fees.  Dr. Vydia cannot bill UHC fees for UHC pts because she is not a specialist, she is a general dentist who prefers to work on children.  If you have any questions please let me know. This also means that pre-d's should be submitted under the correct doctor's name, they should not all be submitted under Dr. B. Remember, with the approval if the location matches then any doctor can provide the approved tx & the approval will be valid, if the location does not match then the doctor MUST match the provider on the approval or it will be invalid & the claim will not be paid. Have a great day! ***See* Exhibit 4 to the original complaint**.[5]

---

[5] Exhibit 12 to the original complaint an example of a Horizon Blue Cross of New Jersey credentialing approval letter for one of Signature's dentists.

72.     Defendants billed Medicaid for services rendered by unlicensed providers.  ***See Exhibit 1 to the original complaint.***.

73.     Defendants allowed x-ray diagnostic tests to be performed by Connie Lloyd Sparks, an unlicensed dental assistant. Defendants subsequently billed Medicaid for those x-rays performed by Ms. Sparks. ***See* Relators' Disclosure Statement;** *see* **Exhibit 14 to the original complaint**.

74.     In order to run this pervasive scheme, Defendants developed a network of holding companies and legal entities. Furthermore, in 2015 Defendant Signature Smiles was acquired by Defendant Blackford.

75.     Defendant Blackford's acquisition of Signature Smiles was a De Facto Merger, and as such, Defendant Blackfordis the legal successor of Signature Smiles liability.

76.     Defendant Blackford is simply a mere continuation of Signature Smiles.

77.     Following the acquisition, Defendant Signature Smiles remained publicly intact as the business operations included the same name, the same location, use of the same employees, and common identity of stockholders and directors.

78.     However, Defendant Scott and Defendant Milt admitted under oath in another legal matter that they were employed by Blackford. Furthermore, Defendants testified that Blackford exhibited complete control over the operations of the newly merged dental practice.

79.     Moreover, Human Resource functions were relocated to Defendant Blackford's corporate office.

80.     Not only did Defendant Scott and Milt believe they were employees of Blackford, but Plaintiffs and other employees all consider Blackford their employer.

81.     If Defendant Blackford's acquisition of Signature Smiles did not result in successor liability, Defendant Blackford is still liable for any claims against Signature Smiles as a result of a joint employment relationship.

82.     Defendants and their multiple entities exerted significant control over the same employees, including Plaintiffs, by determining the governing essential terms and conditions of employment. Defendants share and/or codetermine those matters governing the essential terms and conditions of employment.

83.     Defendant Blackford holding entities owns and controls the premises, dictates the essential nature of the job, and imposes the broad operational contours of the work, while the other legal entities pursuant to Defendant Blackford's guidance, makes specific personnel decisions and administers job performance on a day-to-day basis. Therefore, Plaintiffs and other employees' working conditions are a byproduct to multiple lawyers of control by Defendants.

84.     Defendants exercise control of employees either directly or indirectly, such as through intermediary legal entities.

85.     If anything, employee working conditions are a byproduct of multiple layers of control from Defendants

86.     Defendants' have clear and exclusive control over the means and manner of communicating with employees, enforcement of personnel policies and procedures with its employees.

87.     Thus, any liabilities incurred by Defendant Signature Smiles extend to Defendant Blackford through the doctrine of successor liability. Alternatively, Defendant Blackford is liable for any claims against Defendant Signature Smiles as a result of the joint employment relationship between Defendant Signature Smiles and Defendant Blackford.

## THE STATE OF NEW JERSEY MEDICAID PROGRAM

*General*

88.     Medicaid was enacted in 1965 to enable the state to furnish medical assistance for certain families and aged, blind, and disabled individuals whose income and resources are insufficient to meet the costs of medically necessary services.Medicaid is a jointly financed partnership between the federal government and states.

89.     To participate in Medicaid, states must meet federal core requirements, which include covering a specified set of eligibility groups and providing certain benefits.

90.      The New Jersey Medical Assistance and Health Services Program (New Jersey Medicaid) is administered by the, Division of Medical Assistance and Health Services (DMAHS), an agency of the New Jersey Department of Human Services (NJDHS).

91.     In 1995, New Jersey Medicaid began moving Medicaid beneficiaries from a traditional fee-for-service health insurance program into managed care programs.[6]

92.     Under managed care, clients enroll in a Health Plan which manages their healthcare and offers special services in addition to the benefits to which Medicaid clients are entitled.[7]

93.     The DMAHS administers the New Jersey Medicaid program.

94.     The New Jersey Medicaid program pays for dental services, in addition to other health care needs.

*Dental Services*

---

[6] http://www.state.nj.us/humanservices/dmahs/info/resources/care/
[7] http://www.state.nj.us/humanservices/dmahs/info/resources/care/

95.     "Dental Services" means any diagnostic, preventive, or corrective procedures administered by or under the direct personal supervision of a dentist in the practice of the practitioner's profession. N.J. ADMIN. CODE §10:56-1.2 (2014).

96.     "Dental Services" include treatment of the teeth, associated structures of the oral cavity and contiguous tissues, and the treatment of disease, injury, or impairment which may affect the oral or general health of the individual. N.J. ADMIN. CODE §10:56-1.2 (2014).

97.     "Dental Services" are required to maintain a high standard for quality and shall be within the reasonable limits of those services which are customarily available, accepted by, and provided to most persons in the community within the limitations, and exclusions hereinafter specified. N.J. ADMIN. CODE §10:56-1.2 (2014).

_Dental Provider Enrollment in Medicaid_

98.     The Affordable Care Act (ACA), the Center for Medicare & Medicaid Services (CMS) issued regulations requiring State Medicaid agencies to mandate all professionals providing services under the Medicaid program to be enrolled as participating providers. 42 C.F.R. § 455.410(b).

99.     Dental providers must complete a provider application and sign a provider agreement to participate in New Jersey's Medicaid program. N.J. ADMIN. CODE §10:49-3.2(a) (2014).

100.    All professional dental practices must certify that they comply with all applicable State of New Jersey licensing statutes and rules governing their ownership and direction. N.J. ADMIN. CODE §10:49-3.2(b) (2014).

101.    New Jersey Medicaid will notify the dentist in writing if the dentist's application for participation was approved. N.J. ADMIN. CODE §10:49-3.2(d)(1) (2014).

102.    New Jersey Medicaid will assign the dentist with a provider number.  N.J. ADMIN. CODE §10:49-3.2(d)(1) (2014).

103.    Dental providers participating in the Medicaid program must identify all locations from which they provide services to Medicaid beneficiaries. N.J. ADMIN. CODE §10:49-3.3(a) (2014).

### Medicaid Dental Billing Requirements

104.    Medicaid assigns a seven-digit Provider Billing Number to the dentist once the dentist is approved for participation. N.J. ADMIN. CODE § 10:49-3.4(a) (2014).

105.    The Provider Billing Number shall be entered upon all claims submitted to Medicaid. N.J. ADMIN. CODE §10:49-3.4(a) (2014).

106.    Each location shall comply with provider participation requirements and shall be assigned a separate provider number. N.J. ADMIN. CODE §10:49-3.3(b) (2014).

107.    Services rendered to Medicaid beneficiaries at a location not approved for participation are not eligible for Medicaid reimbursement. N.J. ADMIN. CODE §10:49-3.3(c) (2014).

108.    Providers shall utilize the applicable provider number for each service location. N.J. ADMIN. CODE §10:49-3.3(c) (2014).

109.    All program providers, except institutional, pharmaceutical, and transportation providers, shall be required to certify that the services billed on any claim were rendered by or under his or her supervision (as defined and permitted by program regulations); and all providers shall certify that the information furnished on the claim is true, accurate, and complete. N.J. ADMIN. CODE §10:49-9.8(a) (2014).

110.    The New Jersey Medicaid program utilizes the American Dental Association's

Code on Dental Procedures and Nomenclature as published in the Current Dental Terminology

(CDT). N.J. ADMIN. CODE §10:56-3.1(a) (2014).

111.    Dental claims are submitted on an American Dental Association (ADA) claim

form J-400.  State of New Jersey, Department of Human Services Division of Medical

Assistance and Health Services NEW JERSEY MEDICAID MANAGEMENT

INFORMATION SYSTEM (NJMMIS), March 2014.

*Dental Claim Certification Requirements*

112.    Box 53 of the ADA claim form states:

> "I hereby certify that the procedures as indicated by date are in
> progress (for procedures that require multiple visits) or have been
> completed." State of New Jersey, Department of Human Services
> Division of Medical Assistance and Health Services NEW JERSEY
> MEDICAID MANAGEMENT INFORMATION SYSTEM
> (NJMMIS), March 2014.

113.    Box 53 of the ADA claim form also contains a signatory spot for the "Treating

Dentist." State of New Jersey, Department of Human Services Division of Medical Assistance

and Health Services NEW JERSEY MEDICAID MANAGEMENT INFORMATION SYSTEM

(NJMMIS), March 2014.

114.    For electronically submitted claims, providers are required to certify the

following:

> I certify that the information on these claims will be true, accurate
> and complete; and agree to keep such records as are necessary to
> disclose fully the extent of services provided, and to furnish
> information for such services as the State agency may request; and
> that the services covered by these claims and the amounts charged
> will be in accordance with the regulations of the New Jersey Health
> Services Program; and that no part of the net amount payable under
> these claims has been paid; and that payment of such amount will
> be accepted as payment in full without additional charge to the

patient or to others on his behalf.[8]

*Reimbursement for Dental Services*

115.    A fee will be paid only for services rendered. N.J. ADMIN. CODE §10:56-1.5(b) (2014).

116.    "Specialist" means one who is licensed to practice dentistry in the state where treatment is rendered, who limits his or her practice solely to his or her specialty, which is recognized by the American Dental Association and is registered as such with the licensing agency in the state where the treatment is rendered. N.J. ADMIN. CODE §10:56-1.2 (2014).

117.    To obtain reimbursement as a specialist in the New Jersey Medicaid program, a specialist must have a specialty certification from the licensing agency of the State of New Jersey or of the state where dental services are to be rendered, or the specialist must be a diplomate of a specialty board recognized by the American Dental Association; or the specialist must meet the minimum requirements for that specialty as stipulated by the American Dental Association. N.J. ADMIN. CODE §10:56-1.6(a) (2014).

118.    A dentist who meets the specialist qualifications set forth in N.J. ADMIN. CODE §10:56-1.6(a) and desires specialist reimbursement is required to submit proof of specialist certification to the State's provider enrollment department. N.J. ADMIN. CODE §10:56-1.6(b) (2014).

## THE STATE OF NEW JERSEY BOARD OF DENTISTRY

## REGULATIONS AND STATUTES

---

[8] https://www.secureedi.com/PayersSearch/PC871.pdf

119.     Dentists shall maintain individual records which fully disclose the type and extent of services provided to the New Jersey Medicaid fee-for-service programs beneficiary, including detailing all services rendered for each encounter date. N.J. ADMIN. CODE §10:56-1.9(a) (2014).

120.     The dental treatment plan provided shall be in accordance with the ethical and professional standards of the dental profession and meet the same high standard of quality normally provided to the community at large. N.J. ADMIN. CODE §10:56-2.2(a) (2014).

121.     In accordance with good dental practice, a plan of treatment or services shall be developed and described for each Medicaid patient following a comprehensive evaluation, using a Dental Claim Form. If no treatment is necessary, this fact shall be entered on the Dental Claim Form indicating that there is "No Other Treatment Necessary or NOTN." N.J. ADMIN. CODE §10:56-2.1 (a) (2014).

122.     All materials used and all therapeutic agents used or prescribed in a dental treatment plan shall meet the specifications established by the American Dental Association. N.J. ADMIN. CODE §10:56-2.2(b) (2014).

123.     All radiographs should be examined carefully by the provider to assure quality care and to make certain that all necessary treatment has been diagnosed, planned for and/or completed. N.J. ADMIN. CODE §10:56-2.7(b) (2014).

124.     "Registered dental assistant" means any person who has fulfilled the requirements for registration established by this act and who has been registered by the board. N.J. STAT. ANN. §45:6-49(b) (2015).

125.     A registered dental assistant shall work under the direct supervision of a licensed dentist. N.J. STAT. ANN. §45:6-49(b) (2013).

126.    "Dental hygienist" means any person who performs in the office of any licensed dentist under the supervision of a licensed dentist, those educational, preventive and therapeutic services and procedures which licensed dental hygienists are trained to perform, and such intra-oral clinical services which are primarily concerned with preventive dental procedures, including, but not limited to, during the course of a complete prophylaxis, removing all hard and soft deposits and stains from the surfaces of the human teeth to the depth of the gingival sulcus, polishing natural and restored surfaces of teeth, applying indicated topical agents, surveying intra- and extra-oral structures, noting deformities, defects and abnormalities thereof, performing a complete oral prophylaxis and providing clinical instruction to promote the maintenance of dental health. N.J. STAT. ANN. §45:6-49(d) (2013).

127.    "Direct supervision" means acts performed in the office of a licensed dentist wherein he is physically present at all times during the performance of such acts and such acts are performed pursuant to his order, control and full professional responsibility. N.J. STAT. ANN. §45:6-49(e) (2013).

128.    The administration of local anesthesia, the monitoring of a patient administered nitrous oxide, and any other anesthetic procedures that may be designated by the New Jersey State Board of Dentistry, by regulation, shall be performed by a licensed dental hygienist only under direct supervision. N.J. STAT. ANN. §45:6-69.2 (2013).

**THE NEW JERSEY FALSE CLAIMS ACT**

129.    The New Jersey False Claims Act (NJFCA) became effective on March 13, 2008 and is modeled after the federal False Claims Act.

130.    The NJFCA provides, in pertinent part:

        (a)    A person who: (1) knowingly presents, or causes to be presented, to employee, officer or agent of the State, or to

23

any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State; (3) conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the state, is jointly and severally liable to the State for a civil penalty of not less than and not more than the civil penalty allowed under the federal False Claims Act (31 U.S.C. § 3729 et seq.). N.J. STAT. ANN. §2A:32C-3 (2013).

131.   For purposes of the NJFCA, the terms "knowing" and "knowingly" mean that

a person, with respect to such information:

(1)   has actual knowledge of the information; or (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. N.J. STAT. ANN. §2A:32C-2 (2013).

132.   The NJFCA provides for civil penalties of not less than and not more than the

civil penalty allowed under the federal False Claims Act (31 U.S.C. §§ 3729 et. seq.).

## THE FEDERAL STATUTES AND FALSE CLAIMS ACT

133.   All entities that receive New Jersey Medicaid payments, under Title XIX of the

Social Security Act, of at least $ 5,000,000 must, as a condition of receiving those payments,

fully conform to the provisions of Section 6032 of the Deficit Reduction Act of 2005.[9]

134.   42 U.S.C. §1396a(a)(68) states that such entities must:

A.   establish written policies for all employees of the entity (including management), and of any contractor or agent of the entity, that provide detailed information about the False Claims Act established under sections 3729 through 3733 of title 31, United States Code, administrative remedies for false claims and statements established under chapter 38 of title 31, United States Code, any State laws pertaining to civil or criminal penalties for false claims and statements, and whistleblower protections under

---

[9] See Important Notice to Providers with a High Medicaid Volume at
https://www.njmmis.com/stateFedRegs/DeficitReductionActof2005Section60322.pdf

such laws, with respect to the role of such laws in preventing and detecting fraud, waste, and abuse in Federal health care programs (as defined in section 1128B(f));

B.      include as part of such written policies, detailed provisions regarding the entity's policies and procedures for detecting and preventing fraud, waste, and abuse; and

C.      include in any employee handbook for the entity, a specific discussion of the laws described in subparagraph (A), the rights of employees to be protected as whistleblowers, and the entity's policies and procedures for detecting and preventing fraud, waste, and abuse.".

135.    The Federal False Claims Act (FCA) provides that any person who knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval by the Government is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000 plus three (3) times the amount of damages which the Government sustains because of the act of that person. 31 U.S.C. § 3729(a).

136.    In order to state a conspiracy claim under the FCA, a plaintiff must allege "(1) a conspiracy to get a false or fraudulent claim allowed or paid; and (2) an act in furtherance of the conspiracy." U.S. ex rel. Lampkin v. Johnson & Johnson, Inc., 2013 WL 2404238, *5 (D.N.J. 2013) (citing U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007); 31 U.S.C. § 3729(a)(3)).

137.    Critically, "[t]he essence of a conspiracy under the Act is an agreement between two or more persons to commit fraud." Id. (citation omitted).

138.    A legally false claim under the FCA comes in two types: express false certification and implied false certification. U.S. ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 305 (3d Cir. 2011) (citation omitted).

139.    "Under the 'express false certification' theory, an entity is liable under the FCA for

falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds." Id.

## COUNT I - FRAUDULENT BILLING USING UPCODING

140.    All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein

141.    Dental procedure code D7111 is the code used to describe extraction, coronal remnants - deciduous tooth and removal of soft tissue-retained coronal remnants

142.    Medicaid reimburses $19.50 for Dental code D7111.[10]

143.    Dental procedure code D7140 is the code used to describe an extraction or an erupted tooth or exposed root, including routine removal of tooth structure, minor smoothing of socket bone and closure, as necessary.

144.    Medicaid reimburses $32.00 for Dental procedure code D7140.[11]

145.    On multiple occasions, Defendants performed services which should have been described as D7111 on the claim forms submitted to Medicaid. (*See* **Exhibit 8** for examples where the Defendants up-coded a procedure to charge Medicaid a higher rate.)

146.    On multiple occasions, Defendants billed Medicaid for the more expensive procedure code, D7140 ($32.00), when procedure code D7111 ($19.50) should have been used.

147.    Defendants are required to bill Medicaid using the most accurate description for the procedures performed.

148.    Defendants knowingly chose to use the more expensive procedure code D7140 to describe a lesser service because Medicaid would reimburse them more for that code.

149.    Defendants' fraudulent claims submissions to Medicaid and managed Medicaid

---

[10] See supra note 4.
[11] Id.

programs violated the New Jersey False Claims Act and caused damages.

150. Defendants' fraudulent claims submissions to Medicaid violated the federal false claims act.

### COUNT II - BILLING FOR MEDICALLY UNNECESSARY SERVICES

151. All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

152. Medicaid only covers dental services that are reasonable and necessary.

153. A dental filling is the placement of restorative material into a tooth to restore the function and integrity of a decaying tooth structure.

154. Some fillings are described by Dental procedure codes D2140 through D2394.

155. Reimbursement ranges from $32.00 to $51.00 for each type of filling procedure.[12]

156. A crown is a type of dental restoration which completely caps a tooth and is indicated when a large cavity threatens the ongoing health of a tooth.

157. Crowns are described by Dental procedure codes D2710 through D2792.

158. Reimbursement ranges from $98.00 to $279.00 for each type of crown procedure.[13]

159. Medicaid reimburses a provider more for crowns than it does for fillings

160. On multiple occasions, patients whose teeth which only showed minimal signs of decay received fillings which were not medically necessary.

161. On multiple occasions, patients who had minor cavities received crowns instead of fillings. (*See* **Exhibit 6** for examples of patients who received medically unnecessary services from the Defendants.)

---

[12] https://www.njmmis.com/downloadDocuments/CPTHCPCSCODES.pdf
[13] Id.

27

162.    The Defendants use of fillings was medically unreasonable and unnecessary in the treatment of numerous Medicaid patients.

163.    The Defendants use of crowns was medically unreasonable and unnecessary in the treatment of numerous Medicaid patients.

164.    Defendants knew that they were not entitled to receive Medicaid reimbursement for dental services that were unreasonable and unnecessary.

165.    Defendants' delivery of medically unreasonable and unnecessary services defrauded New Jersey's Medicaid programs in violation of the New Jersey False Claims Act.

166.    Defendants' delivery of medically unreasonable and unnecessary services violated the federal false claims act.

## COUNT III – FRAUDULENT BILLING OF UNCREDENTIALED PROVIDERS

167.    All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

168.    The Defendants employed providers who were not credentialed.

169.    Defendants submitted credentialing applications for its dental providers to Medicaid and other insurers.

170.    The credentialing process could take up to 90 days or more.

171.    Once a provider was credentialed by Medicaid and/or the other insurers, the Defendants would receive notification from the respective insurer, indicating that the provider was able to render services for the insurers' beneficiaries.

172.    The Defendants were not eligible to receive reimbursement from Medicaid and other insurance carriers for services rendered to beneficiaries by non-credentialed providers.

173.    The Defendants knew that they were not eligible to receive reimbursement from

Medicaid and other insurance carriers for services rendered to beneficiaries by non-credentialed providers.

174.     To generate revenue for the Defendants and to pay for the non-credentialed providers' salaries, the Defendants utilized non-credentialed providers to render services for Medicaid beneficiaries.

175.     Patients were scheduled in the Dentrix system under the non-credentialed dental providers who rendered services to these patients. (*See* **Exhibit 9**)

176.     To ensure that the Defendants' received reimbursement for the services rendered by non-credentialed providers, Defendants instructed its staff to manipulate the Medicaid claim forms, by replacing the non-credentialed providers with credentialed providers to appear on the claim form.  (*See* **Exhibit 10** which shows Defendants' instructions to its staff to change the name of providers on the claim forms submitted to Medicaid.)

177.     Defendants knew that they were not entitled to receive Medicaid reimbursement for dental services that were provided by non-credentialed providers.

178.     Defendants' fraudulent claims submissions to Medicaid and managed Medicaid programs violated the New Jersey False Claims Act.

179.     Defendants' fraudulent claims submissions to Medicaid violated the federal false claims act.

180.      The Defendants' fraudulent claims submissions to Medicaid for services rendered by un-credentialed providers violated the Affordable Care Act, which set forth regulations requiring State Medicaid agencies to mandate all professionals providing services under the Medicaid program to be enrolled as participating providers. See 42 C.F.R. § 455.410(b).

## COUNT IV– FRAUDULENT BILLING FOR SERVICES NEVER RENDERED

181.    All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

182.    In order to bill Medicaid for a service, the service must be performed by the credentialed provider.

183.    It is a false claim to bill Medicaid for a service which was not rendered.

184.    On multiple occasions, the Defendants billed Medicaid for services which it did not perform. (*See* **Exhibit 7** for examples of patients who did not receive services but yet the Defendants billed Medicaid as if the services were performed.)

185.    Defendants knew that they were not entitled to receive Medicaid reimbursement for dental services that they never performed.

186.     Defendants' submission of claim forms to Medicaid for services which were never performed defrauded New Jersey's Medicaid programs in violation of the New Jersey False Claims Act.

187.    Defendants' fraudulent claims submissions to Medicaid violated the Federal False Claims Act.

## COUNT V – UNJUST ENRICHMENT

188.    All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

189.    As a consequence of the acts set forth above, Defendants were unjustly enriched at the expense of the United States and the State of New Jersey in an amount to be determined which, under the circumstances, in equity and good conscience should be returned to the United States and State of New Jersey.

## COUNT VI – CONSPIRACY TO DEFRAUD MEDICAID

190.    All of the preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

191.    Defendant Bruggeworth knew that Medicaid would not reimburse the dental practice for services rendered by non-credentialed providers.

192.    Defendant Milt knew that Medicaid would not reimburse the dental practice for services rendered by non-credentialed providers.

193.    Defendant Milt conspired with Defendant Bruggeworth to allow non-credentialed providers render services to Medicaid beneficiaries prior to being approved by Medicaid.

194.    Defendant Milt actively directed the dental practice's billing staff to bill Medicaid using the names of credentialed providers, instead of the actual providers who rendered the services.

195.    Defendants then submitted claims to Medicaid to receive payment that they were not entitled to receive.

## PRAYER FOR RELIEF

**WHEREFORE**, the Relators demand and prays that judgment be entered in its favor against all Defendants:

A.  Under the False Claims Act for the State of New Jersey, in the amount of the State of New Jersey's damages, trebled as required by law, and such civil penalties as are required by law, together with all other relief as may be required or authorized by law and in the interests of justice, and such further relief which this Court deems to be just and proper.

B. Under the False Claims Act for the United States, in the amount of the United States'
damages, trebled as required by law, and such civil penalties as are required by law,
together with all other relief as may be required or authorized by law and in the interests
of justice, and such further relief which this Court deems to be just and proper.

Respectfully submitted,

Dated:  July 15, 2019

/s/ Matthew A. Luber, Esq.
Matthew A. Luber, Esq.
Attorney ID:  017302010
McOmber & McOmber, P.C.
30 S. Maple Avenue, Suite 201
Marlton, NJ 08053
T: 856-985-9800
F: 732-530-8545

Franklin J. Rooks Jr., Esq.
Attorney ID: 023802010
Jacobson & Rooks, LLC
525 Route 73 North, Suite 104
Marlton, NJ 08053
T: (856) 874-8999
F: (856) 494-1707

*Attorneys for Plaintiffs/Relators*
*Karen Meyers & Kristine Costello*